BONAVITACOLA ELECTRIC CONTRACTOR, INC.; Local Union No. 654 International Brotherhood of Electrical Workers; Local Union No. 98 International Brotherhood of Electrical Workers; Curtis Bell,

v.

BORO DEVELOPERS, INC; Frederick J. Shapiro; Bruce H. Shapiro Bonavitacola Electric Contractor; Local Union No. 98, International Brotherhood of Electrical Workers, Appellants.

No. 03–1713.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 30, 2003.

Decided Dec. 8, 2003.

Steven F. Marino, Philadelphia, PA, for Appellants.

Philip A. Yampolsky, Narbeth, PA, for Appellees.

Before SCIRICA, Chief Judge,
NYGAARD and AMBRO, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

Bonavitacola Electric Contractor appeals the District Court's order dismissing its amended complaint for failing to state a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1961–68 ("RICO"). Because we conclude that the amended complaint fails to allege sufficiently that the defendant committed a pattern of racketeering activity as required under RICO and that the plaintiffs suffered direct injury as a result, we affirm the judgment of the District Court.

## I

### Facts and Procedural Posture

On October 31, 2001, Bonavitacola Electric Contractor, along with two labor unions and one individual,[1] filed a 27–count complaint against a competitor electric contractor, Boro Developers, Inc., and two of Boro's officers-employees, Frank and Bruce Shapiro.[2] Bonavitacola alleged that, over a period of ten years, Boro submitted competitive bids to perform electrical work on public projects by the Ridley School District, the Nashaminy School District, and the United States Department of the Navy. Bonavitacola alleges that each of these three bids contained Boro's "fraudulent" promise to comply with prevailing

wage law (the Pennsylvania Prevailing Wage Act, 43 Pa. Stat. Ann. § 165–1, and the federal Davis–Bacon Act, 40 U.S.C. §§ 276 *et seq.*), and as a result Boro was awarded each of the three contracts over Bonavitacola, the second highest bidder. Bonavitacola further alleges that, in connection with each of the three projects, Boro submitted numerous certified payroll reports (requirements under prevailing wage law) that fraudulently misclassified certain employees' activity as "labor" rather than "electrical." Bonavitacola generally alleges that Boro's conduct involved "repeated" (but unspecified) instances of mail fraud and wire fraud, which constitute a predicate act under RICO. Bonavitacola and the labor unions brought 24 counts against Boro and the Shapiros under §§ 1962(a), 1962(c), and 1962(d)[3] of RICO as well as two counts under state law. In addition, co-plaintiff Curtis Bell brought one count against Boro and the Shapiros under state prevailing wage law.

In October 2002, Judge Baylson of the United States District Court for the Eastern District of Pennsylvania granted Boro's motion to dismiss Bonavitacola's complaint. *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,* No. CIV.A.01–5508, 2002 WL 31388806 (E.D.Pa. Oct. 23, 2002) (*"Bonavitacola I"*). Specifically, the District Court found that the complaint did not state a claim under RICO because it (1) did not contain any specific allegation of acts of mail or wire fraud, (2) failed to explain how any of the alleged acts by the defendants furthered

---

1. For convenience we will use "Bonavitacola" as a collective reference to the four plaintiff-appellants: Bonavitacola Electric Contractor; Local Union No. 654, International Brotherhood of Electric Workers; Local Union No. 98, International Brotherhood of Electric Workers; and Curtis Bell, an employee of Boro Developers, Inc.

2. For convenience we will use "Boro" as a collective reference to the defendants-appellees.

3. Eight counts alleging violations of § 1962(d) of RICO were subsequently withdrawn on July 1, 2002.

the scheme to defraud or was incident to an essential part of that scheme, and (3) contained insufficient evidence as to enterprise, relatedness, and continuity. *Id.* *4. But the District Court also granted Bonavitacola leave to amend the complaint, and, in the form of a detailed requirements for including a "RICO Case Statement," instructed Bonavitacola on filing a sufficient RICO complaint. *Id.* *5.

Bonavitacola filed an Amended Complaint on November 11, 2002, but made very few substantive changes from the original complaint. It added numerous subparagraphs specifically identifying each of the various certified payroll reports that allegedly misclassified the activities of either Curtis Bell or an "unnamed black male employee" as "labor" rather than "electrical." *See* Amended Complaint ¶¶ 42A(2)(a)-(aaaa), 42B(2)(a)-(y) and 42C(2)(a)-(p) (App. at A19–A44). Bonavitacola also added a brief discussion of supplemental jurisdiction, removed the § 1962(d) Counts (XVI–XXIV) that the parties had previously agreed to strike, and added an allegation (¶ 109) to Curtis Bell's state law claim (Count XVIII). But Bonavitacola did not include the RICO Case Statement as the District Court had required.

In February 2003, the District Court granted Boro's motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, No. CIV.A.01–5508, 2003 WL 329145 (E.D.Pa. Feb. 12, 2003) *("Bonavitacola II").* The District Court found that the Amended Complaint sufficiently pled the element of "enterprise" required of a RICO complaint, but that it failed to plead the predicate acts of mail and wire fraud with requisite particularity, failed to plead that predicate acts formed a "pattern of racketeering activity," and failed to plead

that Bonavitacola was injured as a direct result. The District Court also held that Bonavitacola could not base its RICO claims on alleged violations of the Davis–Bacon Act because it does not provide a private right of action. The District Court dismissed the Amended Complaint's RICO counts with prejudice and dismissed the state law counts without prejudice. Bonavitacola appeals the District Court's finding that the Amended Complaint failed to plead predicate acts, pattern of racketeering activity, and injury.

## II

### Standard of Review

Our review of the order dismissing the Amended Complaint for failing to state a claim under RICO is plenary. *Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 327 (3d Cir.1999). In applying the same standard as the District Court, we will construe the complaint liberally, take all material allegations as admitted, and draw all reasonable inferences in favor of the plaintiffs. *Id.* "We will not affirm the dismissal unless the plaintiffs could prove no set of facts that would entitle them to relief." *Id.* (citing *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1537–38 (3d Cir.1993)).

## III

### RICO Pleading Requirements

RICO provides a private civil action to recover treble damages for injuries resulting from a defendant's "racketeering activities" in violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). Under one such substantive provision, it is unlawful to conduct an enterprise through a pattern of racketeering activities. *Id.* § 1962(c). Under another, it is unlawful to invest income derived from a pattern of

racketeering activities. *Id.* § 1962(a). To allege successfully a violation under either of these subsections, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" as well as an injury resulting from the conduct constituting a violation. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). "Racketeering activity" means one of the various predicate acts identified in the statute, including acts "indictable" under the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1). When fraud is the predicate act, the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) applies. *Warden v. McLelland,* 288 F.3d 105, 114 & n. 6 (3d Cir.2002). A "pattern of racketeering activity means" at least two predicate acts that "are related and that amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

### IV.

### Analysis of the Amended Complaint

The District Court dismissed the Amended Complaint for failing to state a claim under § 1962(a) and § 1962(c) of RICO. We agree with the District Court that the Amended Complaint did not plead the predicate acts of mail and wire fraud with particularity and did not adequately allege a "pattern of racketeering activity" that directly resulted in Bonavitacola's direct injury.

### A. Predicate Act

■ Bonavitacola attempts to plead that Boro committed mail or wire fraud as a predicate act to violations of RICO. Mail or wire fraud consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) wires to further that scheme, and (3)

fraudulent intent. *United States v. Pharis,* 298 F.3d 228, 233 (3d Cir.2002). When mail or wire fraud is the predicate act to a RICO violation, the plaintiff must allege that mailings are related to the underlying fraudulent scheme, even though mailings need not be an essential element of the scheme and need not themselves contain any misrepresentations. *Tabas v. Tabas,* 47 F.3d 1280, 1294 & n. 18 (3d Cir.1995); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1413 (3d Cir.1991). Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud must be pleaded with particularity, though fraudulent intent may be generally alleged. In the context of RICO mail fraud allegations, this means that the complaint must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Annulli v. Panikkar,* 200 F.3d 189, 201 n. 10 (3d Cir.1999). Put another way, the "who, what, when and where details of the alleged fraud" are required. *Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network,* No. CIV–A–99–4653, 2001 WL 41143 (E.D.Pa. Jan. 18, 2001).

The Amended Complaint alleges that "the defendant Boro Developers, Inc. knowingly and repeatedly used the United States mails and/or interstate wire transmissions in violation of 18 U.S.C.A. § 1341 and § 1343." Amended Complaint ¶ 41. The Amended Complaint also alleges that each of the three bids contained a fraudulent promise to comply with prevailing wage law and that Boro falsified over one hundred certified payroll reports in connection with the three contracts. But the Amended Complaint does not identify any particular mail or wire transmissions or allege how any mail or wire transmissions are connected to a fraudulent scheme.

Even if Bonavitacola had alleged in the Amended Complaint that the certified payroll reports were the underlying U.S. mail or interstate wire transmissions, it is not at all clear from the Amended Complaint how they relate to an underlying fraudulent scheme. Bonavitacola alleges that the intent of the fraudulent scheme was "to obtain the award of electrical contracts from the Ridley and Nashaminy School Districts and the Department of the Navy." Amended Complaint ¶ 41. But the Amended Complaint contains no alleged facts connecting the certified payroll reports, which Boro submitted after being awarded the contract, to the alleged purpose of the fraudulent scheme, which was to obtain the award of the contracts.

## B. Pattern of Racketeering

To plead sufficiently the requisite "pattern of racketeering activity," a RICO plaintiff must allege predicate acts that are related and amount to or pose a threat of continued criminal activity. *H.J. Inc.*, 492 U.S. at 239.

### 1. Relatedness

■ Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240; *Tabas*, 47 F.3d at 1292. In *Kehr Packages*, we observed that relatedness "will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction." 926 F.2d at 1414; *see also Banks v. Wolk*, 918 F.2d 418, 422 (3d Cir.1990) (unspecified acts of mail and wire fraud all related to a single real estate transaction satisfied relatedness requirement).

As discussed above, the Amended Complaint fails to allege predicate acts of mail or wire fraud. At best, the Amended Complaint alleges three separate fraudulent transactions: the Ridley School District bid, the Nashaminy School District bid, and the U.S. Navy bid, each of which contained the allegedly false promise to comply with prevailing wage law. Each of those bids is related to the various, allegedly falsified certified payroll reports prepared for the same project. *See Kehr Packages*, 926 F.2d at 1415.

However, the Amended Complaint does not allege that the three fraudulent transactions are related to each other. Bonavitacola ignored the District Court's clear instructions in *Bonavitacola I* to state in the Amended Complaint "how the alleged predicate acts relate to each other as part of a common plan." *Bonavitacola I*, at *5. Rather, Bonavitacola retained the initial complaint's vague and conclusory allegations that predicate acts of fraud were related by their similar purpose of procuring electrical construction contracts. This is not an allegation of common plan, and without more—such as allegations detailing the transactions' similar results, participants, victims, manner of commission, or other characteristics—will not satisfy the relatedness requirement. *H.J. Inc.*, 492 U.S. at 240.

### 2. Continuity

■ Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. For closed-ended continuity, a RICO plaintiff must allege "a series of related predicates lasting a 'substantial period of time.'" *Hughes v. Consol–Penn. Coal Co.*, 945 F.2d 594, 609 (3d Cir.1991) (citing *H.J., Inc.*, 492 U.S. at 242). For open-ended continuity, the plaintiff must allege a

"threat of continuity" that "exists when the predicate acts are a part of defendant's 'regular way of doing business.'" *Hughes*, 945 F.2d at 609–10 (citing *H.J., Inc.*, 492 U.S. at 242).

Finding no relatedness between the three separate transactions, we cannot measure continuity by collectively considering the numerous alleged acts of deceit associated with all three bids, which spanned eight years. Thus the Amended Complaint lacks predicate acts occurring over a "substantial period of time" necessary for a proper allegation of closed-ended continuity.

Additionally, nothing in the Amended Complaint suggests that Boro's alleged fraudulent transactions are its regular way of doing business. There is no allegation that Boro submitted other bids in which they falsely promised to comply with prevailing wage law in order to get that business. As the District Court properly noted, "[i]f, for example, over these eight years, Defendants had 100 different contracts, the fact that they may have committed fraud as to three of them (Ridley School District, Nashaminy School District, and the Department of Navy) would be plainly insufficient to support a scheme under RICO." *See Kehr Packages*, 926 F.2d at 1418 (with "no indication that [defendants] made other false statements or treated other customers in a similar manner," the complaint did not indicate that fraud was a regular way of doing business).

Thus, the Amended Complaint did not allege fraud that was related or continuous so as to plead sufficiently the "pattern of racketeering activity" element of a RICO claim.

## C. Injury

■ To have standing, a RICO plaintiff must also show that the alleged RICO violations proximately caused injury to the plaintiff's business property. 18 U.S.C. § 1964(c); *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). An indirect injury remotely caused by the RICO violation will not satisfy proximate cause requirement.

Bonavitacola's alleged injury is that, as a result of Boro's false promise to comply with the prevailing wage law, Bonavitacola was denied the opportunity to compete with Boro "on a fair and honest basis," and consequently lost income and profits that it would have earned if it had been awarded the Ridley School District[4] contract.

The Amended Complaint does not allege how Boro's promise to comply with prevailing wage law influenced Ridley School District's decision to award its contract to Boro and not Bonavitacola. For example, the Amended Complaint does not indicate the extent to which Boro's bid was lower than Bonavitacola's bid or whether Boro's bid had lower labor costs than Bonavitacola's bid. Nor does it allege that Boro's bid incorporated any misclassified wages, or that the amount by which Boro underbid Bonavitacola was attributable to misclassified wages. In contrast, the Second Circuit's decision in *Commercial Cleaning Services, LLC v. Colin Service Systems, Inc.* (which Bonavitacola cites in support of its direct-injury argument) illustrates proper allegations of competitor-injury in a RICO complaint: "The complaint asserts that Pratt & Whitney chose Colin because Colin submitted 'significantly lower' bids in a 'highly competitive' price-sensitive mar-

---

4. Bonavitacola does not explain why only the Ridley School District bid formed the basis for its damages allegations.

ket. According to the complaint, Colin was able to underbid its competitors because its scheme to hire illegal immigrant workers permitted it to pay well below the prevailing wage for legal workers." 271 F.3d 374, 382 (2d Cir.2001). A similar description does not apply to Bonavitacola's complaint.

Furthermore, judging by the facts in the Amended Complaint, Boro's promise to comply with prevailing wage law did not become a false promise until sometime *after* Boro had been awarded the bid, when it began to submit (allegedly) false certified payroll reports. As Bonavitacola had already lost the bid, it is not at all obvious what its injury could have been. Nor is any explanation provided in the Amended Complaint.

■ The labor unions' alleged injury is even more remote than Bonavitacola's. The unions state that they would have received additional contributions to their multi-employer benefit plans for employees if Bonavitacola had been awarded the contract. The District Court correctly noted that the Amended Complaint "does not state the requisite allegations to show how the contract revenues following to Plaintiff Bonavitacola, assuming it had been awarded any contract, would have resulted in benefit to the plaintiff labor unions." *Bonavitacola II*, at *12. Nor does the Amended Complaint allege that the labor unions have standing to sue for "these types of damages which, presumably are for the benefit of the union members." *Id.*

For these reasons, we conclude that neither Bonavitacola nor the labor unions have alleged the direct injury required for standing under RICO.

## V.

### Conclusion

We conclude that Bonavitacola did not allege predicate acts of fraud with the requisite particularity, did not allege a "pattern of racketeering activity" and did not allege direct injury required for standing under RICO. Thus we affirm the judgment of the District Court.